UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARZIEH
MOGHADASGHAHFAROKHI, *et al.*,

    *Plaintiffs*,

v.

MARCO RUBIO,

    *Defendant*.

Civil Action No. 24 - 2567 (LLA)

**MEMORANDUM OPINION**

Plaintiff Marzieh Moghadasghahfarokhi, a U.S. citizen residing in the United States, and her father, Plaintiff Valiollah Moghadas, an Iranian national residing in Iran, seek to compel Secretary of State Marco Rubio to adjudicate Mr. Moghadas's immigrant visa application. ECF No. 1.[1]  Plaintiffs contend that Mr. Moghadas's application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶¶ 91-101. The Secretary has moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 4. For the reasons explained below, the court will dismiss the case under Rule 12(b)(6).

I.    FACTUAL BACKGROUND

The court draws the following facts, accepted as true, from Plaintiffs' complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial

---

[1] Plaintiffs named former Secretary of State Antony J. Blinken as Defendant, but the current Secretary is "automatically substituted" as a party pursuant to Federal Rule of Civil Procedure 25(d).

notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA") provides that a U.S. citizen, U.S. national, or lawful permanent resident may petition for a qualifying relative to receive permanent residency in the United States. 8 U.S.C. § 1154. There are several steps to the process. First, the sponsor must file a Form I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS"). *Id.*; *see* 8 C.F.R. § 204.1(a)(1); USCIS, I-130 Petition for Alien Relative.[2] If the USCIS approves the petition, it transfers the case to the U.S. State Department's National Visa Center ("NVC"). 8 C.F.R. § 204.2(a)(3). The foreign national must then submit a DS-260 Immigrant Visa Application to the NVC and await an interview with a consular officer at the appropriate consular office. 22 C.F.R. §§ 42.61, 42.62. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 42.81(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, the officer may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information*;[3] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

Consular officers are forbidden from issuing a visa to any individual from "a country that is a state sponsor of international terrorism" unless the government determines that the applicant "does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a).

---

[2] *Available at* https://perma.cc/57G2-VQ4N.

[3] *Available at* https://perma.cc/RH7T-J7US.

Since 1984, the U.S. State Department has designated Iran a "state sponsor of international terrorism." U.S. Dep't of State, *State Sponsors of Terrorism*.[4]

In July 2022, Ms. Moghadasghahfarokhi filed two Form I-130 petitions on behalf of her parents, Mr. Moghadas and Zabiheh Akbarzadeh Ghahfarokhi. ECF No. 1 ¶ 2. The USCIS approved both in June 2023. *Id.* In August 2023, Mr. Moghadas and Ms. Ghahfarokhi filed their Form DS-260 applications, and the NVC found both of them documentarily qualified later that month. *Id.* ¶¶ 3-4. In March 2024, the NVC specified Yerevan, Armenia as their "eventual immigrant visa interview location." *Id.* ¶ 68. On July 2, 2025, Mr. Moghadas's and Ms. Ghahfarokhi's application statuses updated to "ready for your interview."[5] Mr. Moghadas and Ms. Ghahfarokhi had their visa interviews on August 21, 2025. ECF No. 7. Ms. Ghahfarokhi was thereafter issued a visa and entered the United States, but Mr. Moghadas was informed that his application was being placed in administrative processing under Section 221(g) and that the government would "contact [him] by e-mail when [his] processing is completed." *Id.*

The delay in the adjudication of Mr. Moghadas's visa has caused him and his family "physical, financial, and emotional stresses." ECF No. 1 ¶ 70. Mr. Moghadas is a senior citizen who relies on Ms. Moghadasghahfarokhi for care, which exacerbates the family's distress over being separated. *Id.* ¶¶ 72, 76. Mr. Moghadas has safety concerns because he belongs to a minority religion that faces persecution by Iranian authorities, *id.* ¶ 73, and Ms. Moghadasghahfarokhi has concerns about visiting her father in Iran given the State Department's travel advisory concerning the country, *id.* ¶ 74. Additionally, Plaintiffs are

---

[4] *Available at* https://perma.cc/JY7B-M7DG.

[5] *Available at* https://perma.cc/H76R-QNNL; https://perma.cc/SR2W-RZLA.

suffering "economic turmoil" from the cost of maintaining homes in both the United States and Iran. *Id.* ¶ 75.

## II.     PROCEDURAL HISTORY

In September 2024, Ms. Moghadasghahfarokhi, Mr. Moghadas, and Ms. Ghahfarokhi filed a complaint seeking to compel the adjudication of Mr. Moghadas's and Ms. Ghahfarokhi's visa applications. ECF No. 1. In November 2024, the Secretary moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 4, which Plaintiffs opposed, ECF No. 5. After Ms. Ghahfarokhi received her visa, she sought voluntary dismissal from the case, ECF No. 6, which the court granted, Sep. 3, 2025 Minute Order.

## III.     LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiffs can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing such a motion, the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the plaintiffs' complaint as true and draw all reasonable inferences in their favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## IV.  DISCUSSION

In his motion to dismiss, the Secretary begins by arguing that the State Department does not have a non-discretionary duty to schedule visa interviews, ECF No. 4, at 9-12, and that the scheduling of visa interviews is committed to the Department's discretion, *id.* at 14-18. Given that Mr. Moghadas has now had his visa interview, the court need not address either argument. *Sierra*

5

*Club v. U.S. Army Corps. of Eng'rs*, 64 F. Supp. 3d 128, 137 (D.D.C. 2014) (declining to consider "arguments [that] have been overtaken by events").[6]  Accordingly, the court will focus on the Secretary's remaining argument that Plaintiffs have failed to state a plausible claim for unreasonable delay in the adjudication of Mr. Moghadas's visa application.  ECF No. 4, at 18-27.

Plaintiffs' claims under the APA and the Mandamus Act share the same standards for obtaining relief.  *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")).  Unreasonable delay is analyzed using the six *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *TRAC*, 750 F.2d at 80).  While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay."  *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).  Nonetheless, "[e]ach case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider."  *Air Line Pilots Ass'n v. Civ.*

---

[6] In light of factual developments in the case, the court afforded both parties the opportunity to update their arguments, Aug. 18, 2025, Minute Order, but the Secretary did not respond.

*Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).  The first and fourth factors are most important in the visa context.  *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).  Weighing the *TRAC* factors here, the court concludes that Plaintiffs have failed to state a claim on which relief can be granted.

The first two factors—requiring agencies to follow "a rule of reason" that justifies their timeline and consider any congressionally imposed timelines—are typically analyzed together.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  In essence, these two factors require the court to evaluate "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay.'"  *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *6 (D.D.C. Mar. 8, 2024) (alterations in original) (quoting *Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023)).  In analyzing these factors, the court may consider the "complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).  Both factors favor the Secretary.

Plaintiffs suggest that the delay in the adjudication of Mr. Moghadas's application shows that "Defendant has failed to act within a reasonable period of time."  ECF No. 1 ¶ 109.  The relevant section of the INA provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  But this guidance is not binding, and therefore it cannot be considered to set forth a congressionally imposed deadline.  *See Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement").

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "Courts calculate delays in visa processing using the period between the last government action and the issuance of the opinion." *Asadi v. U.S. Dep't of State*, No. 23-CV-1953, 2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024) (internal quotation marks and alteration omitted). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (third alteration in original) (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has concluded that a four-year delay is not unreasonable. *Da Costa*, 80 F.4th at 342. The court is satisfied that the Secretary uses a rule of reason that does not constitute unreasonable delay. At the time of this decision, Mr. Moghadas's application will have been in administrative processing under Section 221(g) for less than two months. ECF No. 7, at 1.

Plaintiffs argue that the court should instead measure the delay from the "last government action prior to Plaintiffs filing their complaint," *id.*, which was when the NVC informed Mr. Moghadas that he was documentarily qualified on August 29, 2023, ECF No. 1 ¶ 66. But even if the court were to measure the delay from August 2023, it would amount to just over two years. Although such a timeline is undoubtedly frustrating, it does not constitute unreasonable delay when compared to relevant cases.

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors the Secretary. *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the plaintiffs] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee*

8

*Wampanoag Tribal Council*, 336 F.3d at 1100 (third, fourth, and fifth alterations in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Such would be the case here, where moving Mr. Moghadas to the front of the visa-adjudication queue would merely reorder all applicants with no change in the overall timeline.

Plaintiffs counter that the Secretary provides no evidence that "there is a queue at all," and, citing a supporting declaration, argue that administrative processing is "NOT addressed or resolved in a first-in-first-out basis." ECF No. 5, at 38 (capitalization in original); *see* ECF No. 1-7 ¶ 27 (declaration). "Th[ese] assertion[s], however, do[] not grapple with the fact that Plaintiffs' request here boils down to a request that they 'should be prioritized for processing ahead of others.'" *Augustin v. Blinken*, No. 23-CV-76, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023) (quoting *Milligan v. Blinken*, No. 20-CV-2631, 2021 WL 3931880, at *9 (D.D.C. Sep. 2, 2021)). As the declaration Plaintiffs cite explains, the government does not complete administrative processing on a first-in-first-out basis because it must account for political and logistical factors including the "extent of review and coordination required," "the timing of when each partner agency completes its review," and "the need to facilitate travel in the national interest . . . or to address emerging threats, and foreign policy priorities." ECF No. 1-7 ¶ 27. To be sure, the delay Ms. Moghadasghahfarokhi and her family are facing is problematic. But compelling the Secretary to process Mr. Moghadas's application presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)). Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71. It would be improper for

9

the court to intervene and expedite Mr. Moghadas's visa application at the expense of others. The fourth factor thus weighs heavily in favor of the Secretary.

The third and fifth factors concern the impacts of the delay on Plaintiffs. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). Plaintiffs have alleged significant "physical, financial, and emotional stresses" owing to their family's separation, ECF No. 1 ¶ 70, including the economic costs of maintaining homes in two countries, Ms. Moghadasghahfarokhi's "devastation" at being separated from her father, Mr. Moghadas's reliance on his daughter for care, and the risk of religious persecution Mr. Moghadas faces while in Iran, *id.* ¶¶ 71-78. These factors weigh in Plaintiffs' favor.

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiffs allege that the Secretary has acted in bad faith by failing to adjudicate Mr. Moghadas's visa, ECF No. 5, at 43, but they have not shown that the delay was "nefarious or the result of ill will," *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 95 (D.D.C. 2022). Thus, this factor weighs in favor of the Secretary.

\*　　\*　　\*

As the D.C. Circuit explained in *Da Costa*, delays in visa adjudications are "troubling." 80 F.4th at 344. The costs of this delay have surely been difficult for Ms. Moghadasghahfarokhi and her parents. But after weighing the *TRAC* factors, the court concludes that Plaintiffs fail to state a plausible claim for unreasonable delay. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss, and factors three and five are not strong enough to justify the opposite conclusion." *Meyou v. U.S.*

*Dep't of State*, No. 21-CV-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022)).  Accordingly, the court will dismiss the complaint under Rule 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, the court will grant the Secretary's motion to dismiss.  ECF No. 4.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   September 18, 2025

11